## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**HUI LI,**

     **Plaintiff,**

**v.**                              **CASE NO. 1:14-cv-236-RS-GRJ**

**UNIVERSITY OF FLORIDA BOARD**
**OF TRUSTEES,**

     **Defendant.**

_____/

## ORDER

Before me are Defendant's Motion to Dismiss Plaintiff's Second Amended Verified Complaint (Doc. 29), Defendant's Motion for Partial Summary Judgment (Doc. 30), Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 33), Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment and/or Alternatively Response to Defendant's Motion for Summary Judgment (Doc. 34), and Defendant's Response in Opposition to Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment (Doc. 35).

Hui Li sues the University of Florida Board of Trustees for racial discrimination. She alleges that University of Florida denied her admission to the College of Medicine's Psychiatry Residency program because of her race and

national origin. After review, I find that some of Li's claims are time-barred, and that the remaining claims fail to plausibly state a claim upon which relief may be granted. The Board's motions are therefore granted. I further find that Li's motion to strike is frivolous and must be denied.

## I.   STANDARD OF REVIEW

### a.   *Summary Judgment*

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 , 91 L. Ed. 2d 202 (1986).  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.  *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).  However, a mere

'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

### b.        Motion to Dismiss

To overcome a motion to dismiss, a plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S. Ct. 2229, 2232 (1984).  I must construe all allegations in the complaint as true and in the light most favorable to the plaintiff. *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (citing *Lowell v. American Cyanamid Co.,* 177 F.3d 1228, 1229 (11th Cir. 1999)).

## II.      BACKGROUND

Plaintiff Hui Li was born in and raised in China. (Doc. 26 at 2). She graduated from a Chinese medical school in 1986. (*Id.*). In 1999, she moved to the United States, where she performed post-doctoral research at the University of

Texas and Dartmouth University for five years each. (*Id.*). In 2009, she moved to Gainesville, Florida. (*Id.*).

In October 2010, Li first applied to the University of Florida College of Medicine's Psychiatry Residency program. (*Id.*). The program is governed by Defendant University of Florida Board of Trustees, which is the only University of Florida entity with the capacity to be sued. Fla. Stat. § 1001.72(1).

Li soon began work as a researcher for Dr. Jacqueline Hobbs, the director of the Psychiatry Residency program. (Doc. 26 at 2). Hobbs suggested that Li would be a good candidate for the program. (*Id.*). However, in March 2011, Li was rejected from the program. (*Id.*).

Hobbs soon told Li that someone in the office staff said that Li's English was not good enough, and suggested that Li take extra English exams. (*Id.* at 3). This was upsetting to Li, as she had already passed the United States Medical Licensing Examination (USMLE), which tests English proficiency. (*Id.*). Nonetheless, Hobbs took and passed two additional English proficiency exams— the Test of English as a Foreign Language (TOEFL) exam and the Speaking Proficiency English Assessment Kit (SPEAK) exam. (*Id.*).  Li also obtained a strong recommendation letter from a professor in the psychology department, Dr. Lewis Baxter. (*Id.* at 4). Still, Li was rejected again in March 2012 after she reapplied to the program. (*Id.*).

After her second rejection, Li met with Hobbs and the program coordinator, Dorothy McCallister, in April 2012. (*Id.*). Hobbs and McCallister admitted that that all the residents selected were Americans. (*Id.*).[1] Hobbs told Li that a Chairman, Dr. Mark Gold, suggested that Li shadow in an inpatient unit in order to see if she could get along with the other residents. (*Id.*). This was an extremely unusual suggestion as no other candidates had ever been asked to shadow; still, Li agreed and shadowed full-time for seven months. (*Id.* at 4-5). However, in March 2013, Li was yet again rejected from the residency program. (*Id.* at 5).

Li's third rejection came after taking additional English proficiency exams, working in the labs of Dr. Hobbs and Dr. Baxter, and shadowing residents full-time for seven months. Dr. Baxter later wrote to Li that "I think you were unfairly labeled with language problems because of extreme difficulties of a prior Chinese female student." (*Id.*).

On November 17, 2014, Li filed suit in state court. On December 16, 2014, the Board properly removed to this Court on the basis of federal question jurisdiction. On March 16, 2015, Li filed her Second Amended Verified Complaint, alleging race and national origin discrimination in violation of Title VI

---

[1] The Complaint states that "Dr. Hobbs and Ms. McCallister told Plaintiff that all new residents are Americans, which means the program prefers to choose Americans." (Doc. 26 at 4). Although ambiguous, it appears that the second clause of this sentence is not meant to be a quoted confession of discrimination from Hobbs and McCallister, but is rather a legal conclusion added by Li's attorney.

and VII of the Civil Rights Act and analogous claims in violation of the Florida Civil Rights Act ("FCRA").

The Board now moves to dismiss all counts of the complaint, and also seeks partial summary judgment.

### III.   ANALYSIS

I first address Li's motion to strike. Next, I address the Board's partial motion for summary judgment, as it may be dispositive of some of Li's claims. Finally, I address the Board's motion to dismiss.

#### a.   *Plaintiff's Motion to Strike*

##### 1.   *The Merits*

The Board filed two motions attacking the Plaintiff's Second Amended Complaint. In its Motion to Dismiss (Doc. 29), the Board argues that Li's complaint fails to state a claim upon which relief can be granted. In its Motion for Partial Summary Judgment (Doc. 30), the Board argues that a subset of Li's claims are time-barred.

Li responded in part to the Motion for Partial Summary Judgment with a Motion to Strike, arguing that the Board's motion for summary judgment was premature as an answer had not yet been filed. In support of her motion, Li does not cite the text of Fed. R. Civ. P. 56, or any other source of binding authority. Instead, Li relies entirely on a 70-year-old decision from a district court in another

circuit. *See Peoples Bank v. Fed. Reserve Bank of San Francisco*, 58 F. Supp. 25, 27 (N.D. Cal. 1944) ("It is clear that, under Rule 56(a) of the Federal Rules of Civil Procedure . . . a party seeking to recover upon a claim or to obtain declaratory relief may move for summary judgment in his favor only after a pleading responsive to the complaint has been filed.").

Li's motion fails spectacularly. Indeed, it demonstrates an utter failure to engage in basic lawyerly diligence in performing legal research.

Fed. R. Civ. P. 56(b) clearly states that "a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery," (emphasis added). The text of the rule alone is sufficient to defeat Li's argument that the Board's motion must be struck as premature.

However, Li ignores the rule and instead cites a *non-binding* case *from 1944* interpreting Rule 56*(a)*. All of the emphasized facts were red flags warning Li (and her counsel) that rule might be different now, and that *Peoples Bank* might be inapposite. Suffice it to say, that is the case.[2] Rather, a cursory search of more recent authority—including authority in the Eleventh Circuit—would have revealed that summary judgment motions are occasionally filed before answers,

---

[2] While delving into too much historical detail would be unnecessary, not only was *People's Bank* interpreting a section of Rule 56 that applied only to motions filed by plaintiffs (not defendants), Rule 56 was substantially rewritten in 1946—two years after *Peoples Bank*—to allow any party to file a motion for summary judgment at nearly any time in the action. *See* 11 J.W. Moore, *Moore's Federal* Practice, Civil § 56App.01; Fed. R. Civ. P. 56, 1946 Amendment, "Note to Subdivision (a)."

and those motions are timely and proper under Rule 56. *See, e.g., In re Darrow Auto. Grp., Inc.,* No. 09-11228, 2011 WL 1321504, at *3 (Bankr. S.D. Ga. Mar. 29, 2011); *Jones v. U.S. Dept. Of Justice,* 601 F.Supp.2d 297, 302 (D.D.C. 2009) ("A defendant, however, is not required to respond in the form of an answer before making a motion for summary judgment, which may be made by a defending party at any time.") (quotations omitted); *Alholm v. Am. Steamship Co.*, 144 F.3d 1172, 1177 (8th Cir. 1998).

Li's motion to strike is therefore denied. Li's attorney is sternly warned that filing subsequent motions as ungrounded in the law as this one may be met with sanctions for violating Fed. R. Civ. P. 11(b)(2), which requires attorneys to represent to the court when signing any motion that "the claims, defenses, and other legal contentions are warranted by existing law."

### 2. Failure to Comply with Local Rules

However, the problems with the motion extend beyond its substance.

N.D. Fla. Loc. R. 7.1(B) requires counsel for the moving party, when filing most motions (including motions to strike), to confer with the counsel for the opposing party in a good faith effort to resolve the issues raised in the motion. However, Li did not include notice of this certification in her Motion to Strike (Doc. 34), and appears to not have conferred with opposing counsel. This is especially unfortunate in this case, as a reasonable lawyer almost certainly would

not have filed the motion if the grounds for its deficiency were explained by opposing counsel.

Further, the Board points to at least two other motions in which Li's counsel has failed to confer with their counsel pursuant to the local rules. (*See* Motion for Relief from Judgment (Doc. 10); Motion for Leave to File Plaintiff's Amended Verified Complaint (Doc. 16); Second Motion for Leave to File Plaintiff's Second Amended Verified Complaint (Doc. 23)).The lack of compliance is especially troublesome given that the Board has already *twice* specifically addressed Li's failure to comply with N.D. Fla. Loc. R. 7.1(B). (*See* Doc. 11; Doc. 17). Unless Li's attorney has entirely disregarded the Board's responses to his motions, Li has been sufficiently put on notice of the need to comply with this rule.

Li's repeated and knowing disregard of this Court's local rules is inexcusable. Li's attorney is sternly warned that further failure to comply with the local rules may result in dismissal of this action pursuant to N.D. Fla. Loc. R. 41.1(B).

### b.    *Defendant's Motion for Summary Judgment*

The Board, in its Motion for Partial Summary Judgment, argues that Li's Title VII and FCRA discrimination claims as to the 2011 and 2012 denials of admission (although not the 2013 denial) are time-barred. In its Statement of Undisputed Material Facts (Doc. 31), other than relisting some of the allegations in

Li's complaint, the Board submits only Li's original discrimination complaint with the Florida Commission on Human Relations, which is dated December 11, 2013 (Doc. 31-1).

In her response to the motion (Doc. 34), Li does not dispute the authenticity of this document. Furthermore—again in dereliction of the local rules—Li failed to file a "separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried" as required by N.D. Fla. Loc. R. 54.1(A). Accordingly, all material facts set forth in the Board's statement are "deemed to be admitted." *Id.*

In order to bring a discrimination claim under Title VII, a plaintiff must first file a charge with the Equal Employment Opportunity Commission (EEOC) or an equivalent state agency within 300 days after the alleged unlawful practice occurred. 42 U.S.C. § 2000e-5(e)(1); *Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1263 (11th Cir. 2001) (noting that Florida is deferral state subject to 300-day limitations period). The time limit is 365 days for the state law claim. Fla. Stat. § 760.11(1).

This statute of limitations begins to run as to discrete actions—events such as insufficient support, denying a promotion, and termination—from the day those events occur. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S. Ct. 2061, 2077, 153 L. Ed. 2d 106 (2002). Federal courts have explicitly held that

rejections from an educational program are likewise discreet actions. *See Copeland v. CVS Pharmacy, Inc.,* No. CIVA 1:03CV3854 JOF, 2006 WL 2699045, at *35 (N.D. Ga. Sept. 15, 2006) (*citing Pegram v. Honeywell, Inc.,* 361 F.3d 272, 280 (5th Cir.2004) (holding that refusal of admission to an MBA program was a "discrete act" under *Morgan*)).

Here, Li alleges three discreet acts of discrimination—the rejections she received from the psychiatry residency program in March 2011, March 2012, and March 2013. As the 2011 and 2012 rejections occurred, by Li's own admission, more than 365 days before she filed a grievance with the appropriate government agency in December 2013, those claims are time-barred.

Li's counterargument, though extremely difficult to follow, appears to be that the acts of discrimination constituted a single continuing event rather than discreet events, and that the incidents should be considered background evidence to support her timely filed 2013 claim. Her first argument is wrong; her second argument has no bearing on the Board's motion to dismiss her 2011 and 2012 claims.

The Board's motion for partial summary judgment is therefore granted. Li's Title VII and state law claims, to the extent that they relate to the rejections from the 2011 and 2012 admissions cycles, are dismissed with prejudice as time-barred.

### c.     *Defendant's Motion to Dismiss*

The Board next moves to dismiss all of Li's claims on the grounds that she fails to state any claim upon which relief may be granted. The Board raises three arguments: first, that Li's Title VI claims do not adequately allege that the Board receives federal funding; second, that Li's Title VII and Florida claims have failed to exhaust administrative remedies; and third, that all of Li's claims fail to plausibly allege that the Board discriminated against her. I address each in turn.

### 1.     *Failure to Allege Federal Funding in the Title VI Claim*

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., prohibits any recipient of federal financial assistance from discriminating on the basis of race, color, or national origin in any federally funded program. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1202 (11th Cir. 1999). Thus, in order to state a claim for relief in a private Title VI action, a plaintiff must adequately allege that the defendant is, in fact, a recipient of federal financial assistance. *See Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1170 (11th Cir. 2003) ("Title VI also precludes liability against those who do not receive federal funding."); *Barnett v. Baldwin Cnty. Bd. of Educ.*, No. CIV.A. 13-0470-KD-M, 2014 WL 5023413, at *14 (S.D. Ala. Oct. 8, 2014) (granting motion to dismiss Title VI claim where plaintiff failed to allege that defendant received federal funding).

In order to state a claim under Title VI, not only must be the organization receive federal funding, the federal funding must be for the primary purpose of providing employment. *See Russell v. Pub. Health Trust of Miami-Dade Cnty.*, No. 08-23442-CIV, 2009 WL 936662, at *6 (S.D. Fla. Apr. 6, 2009) (citing *Jones v. Metropolitan Atlanta Rapid Transit Auth.,* 681 F.2d 1376 (11th Cir.1982)). 42 U.S.C. § 2000d-3 specifies that Title VI action may only accrue where "a primary objective of the Federal financial assistance is to provide employment."

Li alleges, in relevant part:

> "82. Defendant receives federal funding assistance as well as state funding for the purposes of employment. (Please See Exhibit "B")
>
> 83. Additionally, the Florida Legislature in pledging federal funding stated that a purpose of doing so was to recognize exceptional capabilities to spur innovation, economic development and job creation." (Please See Exhibit "B")
>
> 84. Clearly, the primary purpose of the funding is for employment and research purposes."

(Doc. 26 at 7). Li references an attached pamphlet entitled "UF Preeminence," (*Id.* at 26), which provides information on the Florida Legislature's 2013 designation of the University of Florida as a "preeminent university. (*Id.* at 26). However, the brochure does not appear to contain any mention of federal funding; the UF Preeminence program was enacted by the Florida legislature and involves state, not federal, funding.

In response, Li argues only that "Plaintiff's complaint properly states that Defendant receives federal and state funding for the purpose of employment." (Doc. 33 at 2). This conclusory statement is devoid of substance, and does not address the lack of any factual support behind Li's barren allegations that the Board receives federal funding for the purpose of employment. Li's allegations are mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action*." Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The allegations, supported only by an inapposite document, do not contain enough factual support to "plausibly suggest" that the Board receives federal funding and survive a motion to dismiss. *See Twombly*, 550 U.S. at 557.

Li's Title VI claims are therefore dismissed for failure to state a claim.

I note that the parties also dispute whether Li adequately alleged, in a previous complaint, that the Board received federal funding by accepting Medicare Part A funds. However, as these allegations were removed in the Second Amended Verified Complaint that is currently before me, I see no reason to address them.

## 2.   *Failure to Exhaust Administrative Remedies*

However, before instituting a Title VII action in federal district court, a private plaintiff must file an EEOC (or equivalent state agency) complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge. *Forehand v. Florida State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996). However, a person seeking to file a Title VII lawsuit against a government, governmental agency, or political subdivision must first be issued a right-to-sue letter by the Attorney General of the United States. *Solomon v. Hardison*, 746 F.2d 699, 701 (11th Cir. 1984). This requirement is not jurisdictional, but is instead a condition precedent subject to equitable modification. *Id.*

In her response to the Board's motion to dismiss, Li produced her right-to-sue letter from the Attorney General, issued on April 1, 2015—two days after the Board filed its motion to dismiss on the grounds that she had not yet exhausted her administrative remedies. While there is no per se rule that receipt of a right-to-sue letter during pendency of the suit always satisfies the exhaustion requirement, *Forehand*, 89 F.3d at 1570, Li does not appear to have frustrated the agency's investigation or engaged in other conduct counseling against equitable modification. *Id.*

While it is unclear why Li filed her Title VII complaint before she had exhausted her administrative remedies, even when she could have filed a Title VI complaint and sought leave to amend it once she received her right-to-sue letter, there appears no reason to dismiss her suit on technical grounds. *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61 (5th Cir. 1970) ( "[C]ourts construing Title VII have been extremely reluctant to allow procedural technicalities to bar claims brought under the Act."). Furthermore, courts have specifically noted that "[w]hen a plaintiff files an action asserting a claim under Title VII . . . before receiving a right to sue notice from the EEOC, but thereafter receives such notice during the pendency of the suit, courts generally conclude that equitable modification of the exhaustion rule is warranted. *Collins v. Fulton Cnty. Sch. Dist.*, No. 1:12-CV-1299-ODE-JSA, 2012 WL 7802745, at *32 (N.D. Ga. Dec. 26, 2012).

The Board's motion to dismiss is therefore denied to the extent it argues that Li failed to exhaust administrative remedies.

### 3.   *Failure to State a Plausible Claim for Relief*

Lastly, the Board argues that none of Li's claims state plausible claims for relief and must be dismissed. Specifically, it argues that the complaint fails to state any plausible claim for race or national origin discrimination, which is the crux of all three of Li's claims.

In her complaint, Li appears to only list three factual incidents regarding racial discrimination. First, Li alleges that Dr. Hobbs, the director of the program, told Li in 2011 that someone in the office said that her English was not good enough. (Doc. 26 at 3). Second, Li alleges that Dr. Hobbs told her that her that all the new residents selected for the 2011 admissions cycle were Americans. (Doc. 26 at 4). Third, Li alleges that Dr. Baxter—who is not alleged to have any influence whatsoever about the admissions decisions—told that that he thought she was unfairly labeled with language problems. (Doc. 26 at 5).

These allegations suffer the same faults as her Title VI allegations of federal funding in that they do not contain enough factual support to "plausibly suggest" that the Board discriminated against her based on her race. *See Twombly*, 550 U.S. at 557. The second incident is irrelevant; the selection of an all-American resident class at an American university does not imply racial discrimination. (And even if it did, it would not matter, because the claims relating to the 2011 admissions cycle are time-barred and Li has not plead that the 2013 class was entirely American.) The third incident is likewise irrelevant; Dr. Baxter is not alleged to have any influence over the admissions decision process, or even to have meaningful access to any who does. His uninformed speculation that she may have been discriminated against is not sufficient to bring her claim of racial discrimination anywhere near the realm of plausibility.

The first incident is the only allegation even remotely suggesting that Li may have suffered discrimination based on her national origin. However, standing alone (or even taken together with the two other irrelevant incidents), it again does not suffice to make out a plausible claim of discrimination. Merely suggesting that she demonstrate additional English proficiency in order to bolster her chances of admission to a highly competitive medical residency program is not enough to imply that the program thrice illegally discriminated her by denying her admission. Furthermore, Li did in fact take additional tests to demonstrate English proficiency in 2012. By the 2013 admission cycle—the only cycle which is not time-barred— her English proficiency had been further demonstrated, yet she alleged no additional facts in the next year to imply any additional or continuing discrimination against her. Dr. Baxter's speculations provide no evidence that the admissions committee discriminated her against based on her Chinese origin during the 2013 cycle.

The other allegations in the narrative of Li's complaint—that she was continually asked to undertake additional and unusual tasks to bolster her chances of admission, and yet denied admission—do not in any way suggest that she suffered racial discrimination at the hands of the admissions committee.

Furthermore, Li has failed to even allege sufficient factual content to tie the admissions committee to her rejection decision. The complaint interchangeably

uses the phrases "was denied admission" and "did not match" to describe Li's rejection. Although not fully explained in the complaint, I take judicial notice of the well-known fact that the residency program, as suggested in Li's complaint, participates in the National Resident Matching Program.

> National Resident Matching Program ("NRMP") is a not-for-profit corporation that conducts "the Match," an annual program through which senior medical students apply and are assigned to open medical residency positions. To participate in the Match, an applicant must register with NRMP and comply with the terms of a contractual agreement, the "Match Participation Agreement." Each applicant provides NRMP with a list ranking the residency programs to which the applicant wishes to be assigned; each residency program, in turn, submits to NRMP a list ranking the applicants that it is willing to hire. Once those lists are entered into a database, NRMP runs a computer program that pairs applicants with open positions in a manner calculated to produce "optimal matches of applicants to programs.

*Nat'l Resident Matching Program v. Elec. Residency LLC*, 720 F. Supp. 2d 92, 96 (D.D.C. 2010). Li's complaint does not allege sufficient factual content to plausibly show that the admissions committee, which only had the indirect ability to control which candidates "matched"—i.e., were admitted to the program—acted to ensure that Li was rejected by the Matching Program.[3]

Li argues that her complaint should survive dismissal because Li "was told she needed to take extra tests, work in more labs, shadow doctors . . . because she

---

[3] In an abundance of caution to avoid converting the motion to dismiss into a motion for summary judgment, I do not consider, as the Board requests, the Florida Commission on Human Relations's Investigative Memorandum, which is attached as an exhibit to Li's complaint. (*See* Doc. 26 at 19-22).

is Asian," and that a program agent stated that "the program prefers Americans." (Doc. 33 at 4). However, neither of the contentions are supported by the allegations actually present in the complaint. To the extent that the complaint does attempt to make these claims, it does so only through "conclusory" allegations that are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. (*See, e.g.*, Doc. 26 at 4 ("Dr. Hobbs and Ms. McCallister told Plaintiff that all new residents are Americans, *which means the program prefers to choose Americans.*") (emphasis added)). Li's empty cries of "discrimination!" cannot overcome the rule that the pleadings demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Li's claim has thus failed to plausibly state any claim upon which relief may be granted, and is dismissed.

Dismissal with prejudice based on failure to state a claim should only come where it is clear that the plaintiff can prove no set of facts in support of the claims in the complaint. *Hull v. Bri Sharky's, LLC*, No. 5:14-cv-135-RS-CJK, 2014 WL 5772020, at *3 (N.D. Fla. Nov. 5, 2014) (citing *Canadyne—Georgia Corp. v. NationsBank, N.A. (South),* 183 F.3d 1269, 1272 (11th Cir.1999)). This is now the third complaint that Li has submitted in this litigation; she has already amended the complaint twice in response to the Board's previous motions to dismiss. (*See* Docs. 7, 20). Significantly, in both of those motions to dismiss, the Board raised

arguments as to the sufficiency of the complaint that were similar to the arguments raised in the present motion; Li was put on notice of the potential deficiencies in her complaint, and has had ample opportunity to amend it in order to address them. Furthermore, Li has had an extended opportunity to explore the factual background of this case during her participation in the Florida Commission on Human Relations's investigation of the matter. (*See* Doc. 26 at 19-22).

Furthermore, Li's conduct in this litigation has provided two additional reasons to believe that she cannot prove any set of facts in support of the claims of the complaint. First, Li's repeated failure to comply with the local rules of this Court—especially N.D. Fla. Loc. R. 7.1(B)—demonstrate both a lack of respect for the authority of this Court and a lack of the diligence necessary to successfully pursue litigation before it. Second, Li's pithy and under-developed legal memoranda, which contain few citations to binding authority and consistently misconstrue the factual allegations present in the complaint, indicate a degree of frivolity in Li's case that is unlikely to be cured by additional amendment.

Finally, Li has not requested an additional opportunity to amend her complaint. A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).

Therefore, I find that it is clear that Li can plead no set of facts that can support her claims of racial discrimination. Dismissal of these claims must therefore come with prejudice.

### IV.   <u>CONCLUSION</u>

After review, I find that Li's motion to strike is frivolous and must be denied. I further find that all of her claims must be dismissed. Her claims relating to the 2011 and 2012 admissions cycles are time-barred. Her Title VI claims fail to adequately allege that the Board receives federal funding for the purpose of providing employment. Finally, all of her remaining claims fail because they do not plausibly allege that the Board engaged in racial discrimination against her.

Therefore, Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment and/or Alternatively Response to Defendant's Motion for Summary Judgment (Doc. 34) is **DENIED.** The relief requested in Defendant's Motion for Partial Summary judgment and Accompanying Memorandum of Law (Doc. 30) is **GRANTED**; Plaintiff's claims of discrimination during the 2011 and 2012 admission cycles are **DISMISSED WITH PREJUDICE** as time-barred. The relief requested in Defendant's Motion to Dismiss Plaintiff's Second Amended Verified Complaint (Doc. 29) is **GRANTED**; all of Plaintiff's remaining claims are **DISMISSED WITH PREJUDICE.**

**ORDERED** on April 20, 2015.

<u>**/s/ Richard Smoak**</u>
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**